MIED ProSe 14 (Rev 5/16) Complaint for Violation of Civil Rights (Prisoner Complaint)

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN

Jeremy Daniel Schuh

Case: 2:20-cv-10468
Judge: Lawson, David M.
MJ: Whalen, R. Steven
Filed: 02-24-2020 At 02:40 PM
PRIS JEREMY SCHUH V JERRY CLAYTON, ET AL (LG)

*(Write the full name of each plaintiff who is filing this complaint. If the names of all the plaintiffs cannot fit in the space above, please write "see attached" in the space and attach an additional page with the full list of names.)*

Jury Trial:  ☒ Yes  ☐ No
*(check one)*

**v.**

Jerry Clayton, et. al.

(See attached)

*(Write the full name of each defendant who is being sued. If the names of all the defendants cannot fit in the space above, please write "see attached" in the space and attach an additional page with the full list of names. Do not include addresses here.)*

## Complaint for Violation of Civil Rights
## (Prisoner Complaint)

### NOTICE

Federal Rules of Civil Procedure 5.2 addresses the privacy and security concerns resulting from public access to electronic court files. Under this rule, papers filed with the court should *not* contain: an individual's full social security number or full birth date; the full name of a person known to be a minor; or a complete financial account number. A filing may include *only*: the last four digits of a social security number; the year of an individual's birth; a minor's initials; and the last four digits of a financial account number.

**Except as noted in this form, plaintiff need not send exhibits, affidavits, grievance or witness statements, or any other materials to the Clerk's Office with this complaint.**

**In order for your complaint to be filed, it must be accompanied by the filing fee or an application to proceed in *forma pauperis*.**

Page 2

I. The Parties to This Complaint

A. The Plaintiff

Name — Jeremy Daniel Schuh

Current Institution — Washtenaw County Jail

Address — 2201 Hogback Rd., Ann Arbor MI 48105

B. The Defendant(s)

Defendant 1

Name — Jerry Clayton
Job or Title — Washtenaw County Sheriff
Employer — Washtenaw County
Address — 2201 Hogback Rd. Ann Arbor MI 48105
Suins In — Official Capacity

Defendant 2

Name — Mark Ptaszek
Job or Title — Under Sheriff for Washtenaw County
Employer — Washtenaw County Sheriff Dept.
Address — 2201 Hogback Rd. Ann Arbor MI 48105
Suins In — Official Capacity

Defendant 3

Name - Michelle Billard
Job or Title - Corporate Counsel
Employer - Washtenaw County
Address - 220 North Main St., Ann Arbor MI 48104
Suing In - Personal and Offical Capacities

Defendant 4

Name - Eric Kunath
Job or Title - Commander Washtenaw County Jail
Employer - Washtenaw County Sheriff Dept.
Address - 2201 Hogback Rd. Ann Arbor MI 48105
Suing In - Official Capacity

Defendant 5

Name - Michelle Brown
Job or Title - Health Care Administrator
Employer - WellPath
Address - 2201 Hogback Rd. Ann Arbor MI 48105
Suing In - Personal and Official Capacities

Page 4

Defendant 6

Name - Katrina Robinson
Job or Title - Washtenaw County Sheriff Deputy
Employer - Washtenaw County Sheriff Dept.
Address - 2201 Hogback Rd. Ann Arbor MI 48105
Suins In - Personal Capacity

Defendant 7

Name - Lieutenant Schiappacasse
Job or Title - Lieutenant of Washtenaw County Jail
Employer - Washtenaw County Sheriff Dept.
Address - 2201 Hogback Rd. Ann Arbor MI 48105
Suins In - Personal and Official Capacities

Defendant 8

Name - Sergeant Clifton
Job or Title - Sergeant of Washtenaw County Jail
Employer - Washtenaw County Sheriff Dept.
Address - 2201 Hogback Rd. Ann Arbor MI 48105
Suing In - Personal Capacity

Defendant 9

Name – Richard Williams III
Job or Title – Sergeant of Washtenaw County Jail
Employer – Washtenaw County Sheriff Dept.
Address – 2201 Hogback Rd. Ann Arbor MI 48105
Suing In – Personal Capacity

Defendant 10

Name – Sergeant Flint
Job or Title – Sergeant of Washtenaw County Jail
Employer – Washtenaw County Sheriff Dept.
Address – 2201 Hogback Rd. Ann Arbor MI 48105
Suing In – Personal Capacity

Defendant 11

Name – Sergeant Burris
Job or Title – Sergeant of Washtenaw County Jail
Employer – Washtenaw County Sheriff Dept.
Address – 2201 Hogback Rd. Ann Arbor MI 48105
Suing In – Personal Capacity

Defendant 12

Name - Brandon Roberts
Job or Title - Washtenaw County Sheriff Deputy
Employer - Washtenaw County Sheriff Dept.
Address - 2201 Hogback Rd. Ann Arbor MI 48105
Suing In - Personal Capacity

Defendant 13

Name - Deputy Fendt
Job or Title - Washtenaw County Sheriff Deputy
Employer - Washtenaw County Sheriff Dept.
Address - 2201 Hogback Rd. Ann Arbor MI 48105
Suing In - Personal Capacity

Defendant 14

Name - Erin Clark
Job or Title - LPN at Washtenaw County Jail
Employer - WellPath
Address - 2201 Hogback Rd. Ann Arbor MI 48105
Suing In - Personal and Offical Capacities

Page 7

Defendant 15

Name – Sergeant Justice
Job or Title – Sergeant of Washtenaw County Jail
Employer – Washtenaw County Sheriff's Dept.
Address – 2201 Hogback Rd. Ann Arbor MI 48105
Suing In – Personal Capacity

Defendant 16

Name – Carrie A. Engle
Job or Title – LPN at Washtenaw County Jail
Employer – WellPath
Address – 2201 Hogback Rd. Ann Arbor MI 48105
Suing In – Personal and Official Capacities

Defendant 17

Name – Deputy Valdivida
Job or Title – Sheriff's Deputy of Washtenaw County
Employer – Washtenaw County Sheriff's Dept.
Address – 2201 Hogback Rd. Ann Arbor MI 48105
Suing In – Personal Capacity

Defendant 18

Name - Food Service Director Morario

Job or Title - Director of Food Service at Washtenaw County Jail

Employer - Summit Food Services

Address - 2201 Hogback Rd. Ann Arbor MI 48105

Suing In - Personal and Official Capacities


Defendant 19

Name - Deputy Kohlenberg

Job or Title - Washtenaw County Sheriff Deputy

Employer - Washtenaw County Sheriff Dept.

Address - 2201 Hogback Rd. Ann Arbor MI 48105

Suing In - Personal Capacity


Defendant 20

Name - Deputy Dea

Job or Title - Washtenaw County Sheriff Deputy

Employer - Washtenaw County Sheriff Dept.

Address - 2201 Hogback Rd. Ann Arbor MI 48105

Suing In - Personal Capacity


Defendant 21

Name - Deputy Le

Job or Title - Washtenaw County Sheriff Deputy

Employer - Washtenaw County Sheriff Dept.

Address - 2201 Hogback Rd. Ann Arbor MI 48105

Suing In - Personal Capacity

Page 9

## II. Basis For Jurisdiction.

The Basis of this Court's Jurisdiction is 42USC§1983 and 28USC§1367, as I am suing local officials. The Constitutional Rights I am Claiming were violated are - First Amend. Right against Retaliation; First Amend. Rights under Free Exercise Clause; Fourth Amend. Right against Unreasonable Searches and Seizures; Fourtheenth Amend. Right to Due Process; and Fourtheenth Amend. Right to Equal Protection of Laws. The Statutory Rights I am claiming were violated are - 29USC§794 of the Rehabilitation Act; 42USC§12132 of Title II American with Disabilities Act; 42USC§12181 of Title III ADA; and 42USC§2000cc§3 of RLUIPA.

## III. Prisoner Status.

I was and Am a Pre-Trial Detainee during All times Relevant to Claims stated herein, as Contained in attached Affidavit.

## IV. Previous Lawsuits

Previous Lawsuits I Filed are as follows —

(1) Jeremy Daniel Schuh v. J. Dykstra, et. al. ; Case No. 07-CV-725 (WD Mich. 2007) ; Hon. Robert Jonker ; Case Dismissed.

(3) Jeremy Daniel Schuh v. Rodney W. Pollard, et. al. ; Case No. 08-CV-10482 ; Hon. Avern Cohn ; US Dist. Court Eastern Dist. of MI ; Filed on Feb. 1, 2008 ; Case Dismissed without Prejudice ; Case Appealed.

(3) Jeremy Daniel Schuh v. MDOC, et. al. ; Case No. 09-CV-982 ; Hon Ray Kent ; US Dist. Court Western Dist. of MI ; Case Dismissed After Trial and Remand by Court of Appeals.

(4) Jeremy Daniel Schuh v. Washtenaw County, et. al. ; Hon. Avern Cohn ; US Dist. Court Eastern Dist. of MI ; Case Dismissed and Appealed.

## V. Cert. and Closing.

Under Fed. R. Civ. Pro. 11, by signing below I certify to the Best of my Knowledge, Info, and Belief that this Complaint (1) is NOT being presented for an Improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a Non frivolous argument for extending, modifying, or reversing existing Law; (3) the Factual contentions have evidentiary support, or if so specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the Complaint Otherwise complies with the requirements of Rule 11

## A. For Parties without an Attorney.

I agree to provide the Clerk's office with Any changes to my address where Case related papers may be served. I Understand that my failure to keep a Current address on file with the Clerk's Office may result in the dismissal of my Action.

*Jeremy D. Schuh*

2-13-20

Jeremy Daniel Schuh
Washtenaw Cnty. Jail
2201 Hogback Rd.
Ann Arbor MI 48105

Page. 1

# In The United States District Court
## For The Eastern District of Michigan

Jeremy D. Schuh,

Plaintiff,

V.

Jerry Clayton, et. al.

Defendants _____ /

## Affidavit of Jeremy D. Schuh and Statement of Claims in this Honorable Court

1.) I Jeremy Daniel Schuh, state and affirm Under the Penalty of Perjury pursuant to 28 USCS 1746, that All the information contained herein this document is True; and that I can and will testify both Competently and Honestly as to any facts contained herein before Any Court.

2.) Issue One: Denial of Access to Court Right Resulting in Legal Injury.

On August 8th, 2018, while a Pretrial Detainee, I turned in a written request, requesting that I be given access to the Washtenaw County Jail's Law Library for a "then On-going" 42 USC §1983 Civil Rights suit I had been fighting since 2009 in the U.S. District Court for the Western District of MI in Case No. 09-CV-982. I stated in this request, the Case No. of the then pending matter and that I needed LawLibrary access to research and prepare in this matter ASAP. However, I Never received Any form of response from Jail staff in charge of Granting myself access to Law Library. On September 4th, 2018, I wrote a 2nd. Request to Access the Jail's LawLibrary, this Request addressed to "Correctional Services and Classification" (as was whom I was informed by Jail staff is and was in charge of Granting Access). In this Request I stated, that on 8-8-18 I wrote a "kite" requesting access to Law Library for "Pending Federal Civil Suit" that I was Representing myself in/on; to that date had yet to be given essential Access so I could adequately Research and Prosecute the suit

Page. 3

2.cont.) "even though the Case was verified over Two weeks prior" thus establishing need (as the Jail's Legal verification process had shown I had a "On-Going Pending Federal §1983 suit that I was in-fact Representing myself on with, Deadlines nearing). I then continued by stating in this 2nd. Request, "as it was in-fact the Same Case that had gained myself LawLibrary Access in 2014 while in Jail", as Case had been pending since 2009; and if Legal Injury is sustained "the County" will become liable pursuant to-Lewis v. Casey (518 U.S. 343, 351 (1996)) (See also, Christopher v. Harbury 536 U.S. 403, 415-17 (2002); Harbin-Bey v. Rutter 420 F.3d 571, 578 (6thCir. 2005) and Courtemanche v. Gregels 79 Fed. Appx. 115, 117 (6thCir. 2003))! I Again requested I be given Access to the Jail's Law Library As Ap; to No Avail. Then on September 11, 2018, the Jail's "Lieutenant (Lt.) Schinpacasse" (whom at that time was in-charge of the Jail's Classification) came to my cell in Medical, and informed myself directly that; he was advised by the County's and Sheriff's Department "Corporate Counsel-Michelle Billard" (whom's job consists of Policy and Constitutionality advisements of Jail Policy being implemented), that since I am not confined in Jail per the on-going Federal Civil Action he did not have to allow myself Access to the Law Library, which was why I had been denied said Access since initially requested in Aug.

2. cont.) I then directly informed Lt. Schiappacasse, that Corp. Counsel-Billard, was mistaken in her assessment of the Access to Court Rights Law, and their denial makes not only them Both liable but also the County liable for "Unconstitutional Officeal Custom" (See, Burgess v. Fischer 735 F.3d 462, 478 (6th Cir. 2013); Pembaur v. City of Cincinnati 475 U.S. 469, 480 (1986); Connick v. Thompson 563 U.S. 51, 61-62 (2011); and Los Angeles Cnty. v. Humphries 562 U.S. 29, 36 (2010), Lt. Schiappacasse, than stated to me he did not care. I then informed Lt. Schiappacasse, that I believed I already missed one Court mandated vital deadline (which I was unsure of at the time) and would miss others and suffer "Further legal Injuries" in a Case I been fighting for nearing 10 years, and himself, the County, and Ms. Billard would/will be held liable for that. It was then that Lt. Schiappacasse, told myself to do what I felt I had to do and left my cell. On Sept. 11, 2018, I filed a Grievance to Sheriff Clayton/IA, regarding Lt. schiappacasse's and Corp. Counsel's Billard, violation of my 14th Amend. Access to Courts Right, and the County's Unconstitutional Policy re: Inmate Access to Law Library for §1983 suits. On Sept. 11, 2018, I filed a Second Grievance to Jail Capt. (Randy Casey), re: my being denied Access to the Jail's Law Library.

2. cont.) On Sept. 12, 2018, I filed a 2 pg. Grievance to the Jail's Commander (Eric Kurath) and Capt. (Randy Casey), in this Grievance I stated my then next approaching deadline was 9-18-18 which was to file all Pretrial Motions, and I was not going to be able to meet it w/o Due to denial of Access to Law Library. I also stated, that I filed a request for TRO with the WD Fed. Court for this denial. It was the following day on Sept. 13, 2018, that Capt. R. Casey, and Lt. Schiappacasse, came to my cell in Medical and advised myself that I would be allowed to use the Jail's Law Library as a "courtesy" and/or on "Non-precedent basis".

3.) Pursuant to Docket Entry # 355 of the herein mentioned Civil suit in the matter of Schub v. MDOC, et. al. Case No. 1:09-CV-982 in the WD Mich. US District Court Hon. Ray Kent "Case Management Order", it states on Page 2 at § 2 b, that Discovery is to be completed by August 30, 2018 (See, Schub v. MDOC D/E #355 dated May 30, 2018)

4.) On October 6, 2018, I filed a Response to the Defendants' Motion for Summary Judgment they filed on Sept. 28, 2018. In my Response, I requested "limited Discovery per. Fed. R. Civ. Pro. 56" (as I was Forced to miss my Discovery deadline

4. cont.) due to Denial of Access to Law Library) in the Relief Section of the Response; hoping it may save myself from "Actual Legal Injury" of being denied necessary discovery of the vital records stated therein (See, D/E#363 dated 10-12-18 at Pg.11).

5.) However, on Sept. 23, 2019, the US District Court Granted the Defendants' Motion for Summary Judgment, dismissing my suit against them; "because the Plaintiff presented no verifying Medical evidence that the Defendants' violated his 8th Amend. Rights" (See, D/E#372, 9-23-19 Order at 7-8).

6.) Accordingly, due to my being denied "Access to Law Library" for a known and verified §1983 Complaint that was On-Going, with known deadlines, most important of which I in-fact Missed (the 8-30-18 Discovery Deadline) caused Legal Injury of my suit to be "improperly dismissed"; as I was unable to adequately research and file for Vitally needed discoverable material cited in my Oct. 2018 Responsive Pleadings. This supports liability for Lt. Schiappacasse; Corp. Counsel-Billard; and Washtenaw County (See, Christopher v. Harbury 536 US at 415-17; Courtemanche v. Gregels 79 Fed. Appx. at 117; and Burgess v. Fischer 735 F3d at 478).

7.) Issue Two: Excessive Use of Force, Retaliation, and Assault and Battery.

On February 2nd, 2019, while incarcerated at the Washtenaw County Jail as a Pretrial Detainee, I was being escorted back to my assigned cell in the Jail's Medical unit from the Jail's Law Library. Upon arriving at my cell door, I noticed that Deputies Coach, and Fendt (a Deputy I have had numerous issues with over the years even suing him in a previous §1983 Complaint for Excessive Force; See, Schub v. Washtenaw County et. al. (EDMich 2013)) were inside my cell searching it. I then approached the cell door (still standing outside the cell) and asked Deputy Fendt, What he was doing (at no point did I approach either Deputy that were in the Back corner of my cell or start to): It was then that Deputy Fendt, immediately approached myself (from the Very back of the cell to the door where I was), in a highly threatening manner with his "Pepper Spray" already needlessly "in hand (showing his intent), and begun to yell at me in my face at my cell's door, "to get the Fuck out of the cell"! I then told Deputy Fendt, "I'm not in the cell and am not doing anything wrong it is him that is in-fact approaching and threatening me". I was then needlessly "Sprayed" in my eyes by Deputy Fendt, and punched in my face by the

7. cont.) Deputy as my eyes begun to burn; nose start to run; eyes start closing; and it become hard for myself to breathe (See, Vaughn v. City of Lebanon 18 Fed. Apex. at 273). It was then I was placed on the ground, which is when Deputy Fendt stated to myself near my ear; "you're nothing but a bitch Schuh; look at you you're not so tough now are you", while he was needlessly kneeing myself until then Corporal Wezner yelled at Deputy Fendt to stop; and other Deputies approached.

8.) I sincerely believe that based on the facts of the issue with Deputy Fendt, that occurred on February 2, 2019, Deputy Fendt was acting out of Retaliation, due to our past issues and hostility; thus, satisfying "the But For Standard" (See, Hartman v. Moore 547 U.S. 250 (2006)).

9.) On Feb. 2, 2019, I received a False Misconduct written by Deputy Fendt; for Conduct that disrupts the Security of the facility", and was placed in Segregation on Level 1 - Maximum Security status, due to said Misconduct. However on Feb. 6, 2019, I filed a Misconduct Appeal to Jail Commander - Eric Kunath; whom on 3-6-19 responded by Ordering Lt. Schiappac-asse to Reverse and Rehear the Misconduct.

Page. 1

9. cont.) Which Lt. Schiappacasse, responded to the kite request on 3-11-19, but due to the un-avail-ability of my witness(es) as they had been released No Re-hearing ever occurred. Satisfying the minimal "favorable termination" requirement of/for Retaliation as to Deputy Fendt's "false Misconduct" (See, Maben V. Thelen 887 F.252,264 (6th Cir. 2018); and Thomas v. Eby 481 F.3d 434,440 (6th Cir. 2006)).

10.) Accordingly, it is clear that there was No need for Deputy Fendt's Use of Force against myself at the time it was used; that Deputy Fendt's, needlessly aggressive Actions were intended to Not limit or temper the Force used but Excessively escalate it; as I presented No viable Security threat towards Deputy Fendt, while standing outside my assigned cell next to a escorting Deputy (See, Hanson v. Madison Cnty. Detention Ctr. 736 Fed. Appx. 521,528-29 (6th Cir. 2018)). It was also stated that, Deputy Fendt's Actions were "Intended to Punish myself" as is Prohibited for a Pretrial Detainee; and Deputy Fendt's, Actions were not Reasonably related to a Legitimate Governmental Objective (See, Kingsley v. Hendrickson 135 S.Ct. at 2473-74; and Coley v. Lucas Cnty 799 F.3d 530,538 (6th Cir. 2015)). Finally Deputy Fendt's, Actions constitute Assault under MI Law (See, VanVorous v. Burmeister 262 Mich. App. 467 (2004)).

11.) Issue Three: Unreasonable Searches and Seizures.

On August 2, 2018, while at Kroger on E. Mich. Ave. in Ypsilanti, MI, to retrieve my cell-phones from a then aquaintance – Malek Hamami, whom was said to be shopping at the store, I was Arrested "for a Parole Violation", by Washtenaw County Sheriff's Deputies – Brandon Roberts, and Lauren Peliter; with Deputy – Todd Hendricks, on scene. However, it was shortly after my Arrest for the Parole Violation at the Kroger, that Deputy Brandon Roberts, decided to go to my then Girl-friend's – Amanda Elford, residence "approx. a Block away from the Kroger" where I was Arrested at approx. 1 – 1:30 pm, and my cell phones confiscated without the necessary probable cause and/or Warrants (See, Riley v. California 573 U.S. 373 (2014); and Carpenter v. US 138 S.Ct. 2206 (2018)) by Deputy Roberts (whom states that a Warrant was Granted for the phones on 8-3-18 but I have Yet to see to date). It is Note able that one of my confiscated cell phones was not Pass-word protected and in Deputy Roberts' possession for 24 hours prior to the issuance of the still not seen 8-3-18 Warrants.

12.) In Deputy Brandon Robert's own Police Report

12. cont.) he admits to going to Amanda Elford's residence, to conduct an "Investigatory Search" without the Required Probable Cause, due to his mere suspicion, by stating "he went to 95 Lamay Ave. to make contact with Amanda Reference a Search Warrant for her Apartment" (See, Deputy Brandon Roberts', Case Report No. 1800676 at Pg. 13 of 14 dated: 8-3-18 @ 3:56 Pm) (See also, City of Ontario v. Quon 560 U.S. 746, 753-54 (2010); Wong Sun v. US 371 U.S. 471, 479 (1963); Bond v. US 529 U.S. 334, 338 (2000); Kyllo v. US 533 U.S. 27, 37 (2001); Bailey v. US 568 U.S. 186, 199 (2012); and Davis v. US 564 U.S. 229, 232 (2011)).

13.) However, on August 2, 2018, while Washtenaw Sheriff Deputy-Brandon Roberts, was at 95 Lamay Ave., for what he admittedly states was to make contact with Amanda Elford, in "Reference to a Search Warrant for her residence" —Which he admitted did not possess due to the fact he lacked the Required Probable Cause, so he went to 95 Lamay with the sole intent to conduct an "Investigatory Search" to obtain Probable Cause to get a Warrant (See, People v. Mahdi 317 Mich. App. 446, 471 (2016) app. den. 500 Mich. 991 (2017); People v. Russo 439 Mich. 584, 606-07 (1992); Byrd v. US 138 S. Ct. 1518 (2018); US v. Frazier 423 F.3d 526 (6th Cir. 2005); and District of Columbia v. Wesby 138 S. Ct. 577 (2017)) as is

13 cont.) specifically Prohibited (See, Florida v. Jardines 569 U.S. 1, 9, 11 (2013) ; Carpenter v. US 138 S.Ct. at 2206 ; Kentucky v. King 563 U.S. 452 (2011) ; People v. Gallaway 259 Mich. App. 634, 639 (2003) ; People v. LaCierra 453 Mich. 496, 501 (1996) ; and Murray v. US 487 U.S. 533 (1985)) ; this is when Deputy Roberts, makes the "Investigatory Contact" with Cathy and John Santrock (that lived at 95 Lamay Ave. Apt. A, whom I rented a room from for 1 week and had a key to the residence and property there), and Ed Rice ( Cathy and John's friend, that was working on the Jeep in the Detached Garage, for which Amanda had the keys for and sole control over ; as I had property in the Garage by her permission).

14.) It was during this "Investigative Encounter" at 95 Lamay Ave. on Aug. 2, 2018, that Deputy Roberts made contact with — Cathy and John Santrock ; and Ed Rice (whom was working in the Opened Garage), as Amanda was not home. Deputy Roberts, also Falsely claimed that "I had been staying with Amanda on-and-off since February 2018" (See, People v. Franklin 500 Mich. 92 (2017) ; and Franks v. Delaware 438 U.S. 154, 171 (1978)), which was known Falsehood as I merely had some personal property there but was NOT living there ; and stayed approx. 2 nights per week there (sometimes more, some less ; as was the reason for the property). I had Factually not been staying there at 95 Lamay Ave. prior to July 2018, definitely not

14. cont.) since Feb. 2018 as Deputy Roberts alleged.

15.) Deputy Roberts also claims Falsely on Aug. 2, 2018, that I confirmed I was staying at 95 Lamay, this is Clear Subterfuge used in a effort to gain a search Warrant without Probable Cause or showing a Nexus between place to be searched and evidence sought" (See; U.S. v. Carpenter 360 F. 3d 591, 594 (6th Cir. 2004) (En-Banc); People v. Dent 2010 Mich. App. Lexis 1725 (2010); US v. Berry 565 F. 3d 332, 338 (6th Cir. 2009)).

16.) On Aug. 2, 2018, during Deputy Roberts, Investigative encounter with Cathy Santrock, of 95 Lamay Ave. Apt. A "Without Probable Cause or a Warrant", in Full-uniform and Marked Police car, Deputy Roberts states that; "Cathy told him I had been staying with her for approx. 1 week", "And she Showed him the bedroom that I stayed in, and he had the door shut (at some point) and advised Cathy and John not to enter the bedroom". However, per the pictures provided of 95 Lamay Ave Apt. A, by Deputy Roberts, it clearly shows some Very suspicious activities, such as 1.) there is No times on the Picts; 2.) the Bedroom looks to already be searched; 3.) there is property located outside the Bedroom door on floor of hall; 4.) the mattress I slept on is/was not located in the room (so obviously someone searched removing it That morning); 5.) the Security shirt was in-fact under the mattress prior to my leaving

16. cont.) that morning and the room was Clean; and 6.) it is Dark outside (as can be seen through the living room windows) when search executed. However, in some pictures of outside 95 Lamay Ave. (and even One Picture taken inside the opened detached Garage), shows it being Day light out, this is probability because Deputy Roberts, in-fact took it upon himself to go into the Detached Garage that Amanda Elford had sole control over, and I actually opened up and unlocked (with the keys Amanda had) for Mr. Ed Rice to enter and work on the Jeep earlier that morning at Amanda's request. This is contrary to Deputy Roberts claims, that I did not have permission to be in the garage; the garage was shared by all 3 Apt.s located at 95 Lamay Ave.; Mr. Ed Rice was a maintenance person for 95 Lamay; and/or I slept in the garage. Finally from the Day light picture of my bag of clothing and property that was "Clearly Dumped out" and searched prior to picture being taken, was not like that earlier that very morning. Everything was in the Garbage bag, prior to my and Amanda leaving for Kroger, as I went into it when I opened the garage for Ed Rice.

17.) It is Noteworthy, that Washtenaw County Sheriff's Deputy-Katrina Robinson, states in her Case Reports; "that on Aug. 2, 2018" Deputy Roberts, in-fact went to 95 Lamay Ave. "To Secure the scene",

17. (cont.) which seems to be Clear Subterfuge and/or an attempt to conceal Deputy Roberts', Misconduct of conducting "Investigatory Seaches without the mandated Probable Cause" (See, Kyllo v. US 533 US at 37; Murray v. US 487 U.S. at 533), in an effort to Find evidence to be used to help obtain a Search Warrant (See, Wong Sun v. US 371 U.S. at 471) for relevant residence(s) at 95 Lamay Ave. This is even though I was Arrested at another location, on a Parole Violation absconder Warrant, not for no new Criminal Warrants (Reportedly) (See, People v. Wodkowski 2018 Mich. App. Lexis 577 (2018); Maryland v. Buie 494 U.S. 325, 337 (1990); US v. Castro 881 F3d 961, 966 (6thCir. 2018); Michigan v. Tyler 436 U.S. 499, 578 (1978); Los Angeles Cnty. v. Rettele 550 U.S. 609 (2007); US v. Colbert 76 F3d 773, 777 (6thCir. 1996); and Collins v. Virginia 138 S.Ct. 1663, 1670 (2018)). As Deputy Robinson, Fails to mention the Requisite "Exigent Circumstances" and Reasons Requiring Deputy Roberts, to have to "Secure a Scene" more than 5 hours prior to a Warrant being Issued (See, Los Angeles Cnty. v. Rettele 550 U.S. at 614; Mich. v. Tyler 436 U.S. at 578; People v. Blasius 435 Mich. 573, 592 (1990); Birchfield v. North Dakota 136 S.Ct. 2160, 2173 (2016)). As Deputy Roberts', Case Report Clearly admits the reason he went to 95 Lamay Ave, was to Investigate/speak to Amanda in Reference to a Search Warrant (ie, wanted Amanda to allow him to search but she wasn't home).

18.) In Deputy Roberts', Case Report he states, that Both Cathy and John Santrock, informed him that I had been staying with them for about a week and had property in their Apartment; as well as had a key to their Apartment which he had Amanda give back to Cathy (as I gave to her to do that day). Therefore, when Cathy Santrock admittedly allowed Deputy Roberts to enter the Room I Rented From her with my property in it (See, People v. Douglas 39 Q Mich. 775 (1974); People v. Collins 438 Mich. 8 (1991); Lustig v. US 338 US 74 (1949); California v. Hodari D. 499 U.S. 621 (1991), I had a Legitimate expectation of Privacy in the area search that Society is Prepared to recognize as reasonable (See, People v. Mead 2019 Mich. Lexis 635 (MI April 22, 2019); Rakas v. Illinois 439 U.S. 128, 148-49 (1978); and Boyd v. US 138 S. Ct. 1518, 1528 (2018)).

19.) Further from Deputy Robinson's, Case Reports she "conveniently and Ironically states", that while Deputy Roberts was at 95 Lamay Ave., she received a phone-call from Malek Hamami ( while drafting the Affidavit for Search), stating that he recalls the very same following items missing from vehicles that are — 1.) In "plain View" on the kitchen Table of 95 Lamay Ave. Apt. C (visible from outside stairway window) (as Deputy Roberts Picts show) on Aug. 2, 2018; 2.) located in the Master Bed-room of 95 Lamay Ave. Apt. C, "in

19. cont.) Plain View" (as shown by Deputy Roberts', Pictures visible from Entryway to Apartment C, looking into Master Bedroom's window) ; and 3.) located in the Opened garage of 95 Lamay Ave. , that Amanda had Sole control over "at the time", which was where the Investigatory conversation between Deputy Roberts and Ed Rice occured (See, Adams v. Williams 407 U.S. 143 (1972) ; Kyllo v. US 533 U.S. at 37 ; Bailey v. US 568 U.S. 186, 199 (2012) ; People v. Frederick 500 Mich. 228, 236 (MI June 1, 2017) (Denial Concur by Markman, J.) quoting Florida v. Jardines 569 U.S. at 11 ; and Collins v. Virginia 138 S.Ct. at 1670) (as Deputy Roberts', pictures show the garage open and Amanda's car still Not home, with property already searched in day light hours - Prior to Warrant Grant). The Items relevant that Deputy Robinson, falsely alleges were stolen and Mr. Malek Hamami, Ironically Just so happened to call her while she was drafting the Warrant and recalled the items (all the while was Deputy Roberts was admitted at 95 Lamay for a Unknown amount of time) are 1.) Cobra Jumpack w/ cables (located in Garage) ; 2.) Fast charge car charger/phone clip (located in Garage) ; and 3.) Plain Orange LED Flash light (located on kitchen table of Apt. C in "Plain View" visible from stairway).

20.) None of the items alleged to be stolen by Deputy Robinson, were in fact stolen nor belonged to Malek Hamami , or Anyone else ; as I bought the Jumpack for Amanda's

20. cont.) car, due to her having prior car trouble from my Mother's work ; I also bought the phone charger from my Mother's work , but was given the light by my Mother one-night while visiting her at work (she worked at a Truck Stop in Dexter MI selling all items stated) Mid-night — 7am shift.

21.) The Items recovered From 95 Lamay Ave. by Deputy-Roberts, and Robinson, during the "Actual Execution of the Warrant" (approved at 9 pm, on Aug. 2, 2018) are as Follow — 1.) Cobra Jumpack (garage) ; 2.) Fast charge car charger (garage); 3.) Security & Protective Serv. shrit (Apt. A); 4.) Black Nike Flight tennis shoes (no case #) (Apt. A); 5.) Gray Jordans tennis shoes (Apt. A); 6.) Excetera Multi-colored short sleeve shirt (Apt. C) ; 7.) Black Men's jeans Levi's w/ Belt (Apt. C) ; 8.) Black Columbia Jacket (Apt. C); 9.) Black Nike hat (Apt. C); 10.) Orange LED Flash light (Apt. C) and 11.) $15.17, in coins inside Columbia Jacket (no Case #) (Apt. C). It is Noteworthy, that All the Items From 95 Lamay Ave. were able to be seen and/or discovered by Deputy Roberts, and Subter-fusely placed in the Affidavit for Search Warrant by Deputy Robinson, in Reckless Disregard For the Truth ; Without the Required Probable Cause Prior to the Warrant being Granted For the Three Places (See, Franks V. Delaware 438 U.S. at 171 ; and MCL 691.1407)!

22.) On August 2, 2018, the Items Approved by the Magistrate for Deputy Roberts, and Robinson, to Search 95 Lamay Ave (Apts. A, C, and the Garage) for, based on Deputy Robinson's Affidavit, are — 1.) Dark colored long sleeve jacket w/white logo on back upper Right shoulder; 2.) Sunglasses; 3.) Speaker Box w/2, 12 inch. Power Bass Speakers w/2 Amps. on top of Box; 4.) Green Duffle Bag belonging to Edwin Rice; 5.) light colored base ball cap; 6.) Apple Mac Mini; 7.) Dewalt 20 volt 5 piece combo kit; 8.) Rysbi 18 volt 1/2 inch. cordless 3 speed impach wrench; 9.) light colored medium size Safe; 10.) $1500.00 US currency; and 11.) Black leather planner (this is Minus the Items already mentioned as recovered). It shall be Noted that from Aug. 2, 2018, to Date None of these items have ever been recovered or found in my Possession (even though Washtenaw County Sheriff's Deputies searched Two other residences, my Brother-Jeff's Apt., and a storage Facility in my Brother's name, which could not be contested due to his Then Parole status in Washtenaw County at time).

23.) Accordingly, I was Arrested for a Parole Violation Warrant related to Absconding, not any New Criminal Activity that may have given Deputies Roberts, and Robinson, Probable Cause to Search 95 Lamay; and I was Arrested at another location and in Jail when Deputy Roberts, decided to go to 95 Lamay

23. cont.) for what Deputy Robinson, attempted to subterfugely state was, "to secure the scene", but Deputy Roberts, himself stated that he went to 95 Lamay "to Investigate" or in Reference to a Search Warrant for Amanda Elford's (that he did not possess, nor did he have the Probable Cause to obtain at that time).

Then while at 95 Lamay Ave, Deputy Roberts, took it upon himself to enter "without Probable Cause and Prior to a Warrant being Approved" Both my Rented Room where I had property and a key to the residence, and search it Removing (or having removed) the mattress I slept on (including various items located during that search "Without a Warrant and Without Probable Cause" into the Affidavit for Search Warrant done by Deputy Robinson that night); and the Opened garage where Ed Rice was working on a Jeep, but Amanda Elford had sole control over and keys to. Once Deputy Roberts entered the garage in full uniform driving a marked vehicle, to speak to Mr. Ed Rice, where I had property "by Amanda's permission", then Mr. Rice showed Deputy Roberts my property; "which he decided to Search without a Warrant or Probable Cause" (and Again having Deputy Robinson, falsely include various items found during this Search into the Affidavit for Search Warrant). Then Deputy Roberts, begun to look into Amanda's residence windows (including various non-apparent

Page. 21

23. (cont.) contraband Items in "Plain View" into Deputy Robinson's, Affidavit for Search Warrant, seen from the windows), to Investigate Criminal Activity in hopes to gather evidence (See, Mincey v. Arizona 437 U.S. 385, 393 (1978); Kyllo v. US 533 U.S. at 37; and Collins v. Virginia 138 S.Ct. at 1670). As is stated, I had "a Reasonable expectation of Privacy that Society is prepared to recognize", in the Personal Property contained inside the Room I Rented and had a key to at 95 Lamay Ave. Apt. A, which I did not Consent to be searched by Deputy Roberts, without Probable Cause Prior to a Warrant being Granted, when Cathy Santrock, showed him said room. I also had said expectation of privacy in the Property contained inside the Garage controlled by my then Girlfriend - Amanda Elford (See, People v. Mead 2019 Mich. Lexis 635; Bryd v. US 138 S.Ct. at 1528), as well as the Right to NOT have Deputy Roberts, not Trespass looking into the windows of 95 Lamay Ave. Apt. C, without Probable Cause to falsely gather evidence using it to falsely establish Probable Cause as provided by Deputy Robinson (See, Kyllo, at 37; People v. Frederick 500 Mich. at 236; People v. Horacek 501 Mich. 931, 932 (2017); and Franks v. Delaware 438 U.S. at 171); thus, establishing Factual Civil Conspiracy to include False info into a Affidavit for Search without Probable Cause (See, Robertson v. Lucas 753 F3d 606, 622 (6th Cir. 2014)). This establishes that BCIH Deputy Roberts, and Robinson, violated my 4th Amend. Rights by conducting a search, over 5 hours before Warrant (See, Wallace v. Kato 549 U.S. at 393; Petter v. Stephens 886 F3d 1256 (6th Cir. 2018).

24.) Issue Four : Denial of Adequate Medical Care, ; Failure To Protect ; Denial of Equal Protection Rights ; Municipal Liability ; Retaliation ; Discrimination under Americans with Disabilities Act and Rehabilitation Act ; Gross Negligence ; and Class of One.

On February 28, 2019, I wrote a Medical Grievance against Washtenaw County Jail's Medical staff (while a Pre-Trial Detainee in/at the Jail), for "Failure to provide Reasonable Accommodation" due to known and Well-Medically documented "Seizure Condition" that I am receiving Chronic Care Seizure Medication for (See, In re. Hicks-Brown 500 Mich. 78, 85-88 (MI 2017) ; Pierce v. Dist. of Columbia 128 F. Supp. 3d 250, 269 (DDC 2015)). In this Grievance I stated "I have been documented by 3 separate ERs as a Fall-Risk due to this Condition , that I had a No stair and lower Bunk detail ; but was then housed in a Unit w/ Stairs , a ladder , and ALL metal cell furnishings so could injure self during Well documented condition". I also stated "that I was not a Security Threat, and there was NO reason that I should NOT be continued to housed in Medical in a Open Cell as was from Sept. 2018 ; and if I fell injuring self it showed Deliberate Indifference (to Health and Safety )(See, Farmer v. Brennan 511 U.S. 825, 837 (1994); DeShaney v. Winnebago Cnty. 489 U.S. 189, 200 (1989) ; and Villegas v. Metro Gov. of Nashville 709 F3d 563, 568-69 (6th Cir. 2013)). In a Response to my Grievance , I was informed ; a Chart Review Re: Stairs, meanwhile please use minimal stairs w/ caution ; and kite Jail's Classification

24.cont.) and on that day was having "a bout of Seizures when I came to, I was Moved with then RN Supervisor Michelle Brown, telling the Jail's Sergeants to move myself, which caused Injury to my neck area, and Violates Rudimentary elements of Medical Procedure for seizures (See, Farmer v. Brennan 511 U.S. at 825; Winkler v. Madison Cnty. 893 F.3d 877, 890-91(6th Cir. 2018)). On Novemember 18, 2019 I filed a Medical Grievance, against LPN Rebecca W., whom "knowingly and in Reckless Disregard for my Safety" approve, Jail Custody staff to place myself in the Jail's Emergency Restraint Chair (ERC) while I was having a bout of seizures", which caused Neck pains and stiffness to said date (from Nov. 2nd, 2019). On 11-20-19 Health Care Admin. Michelle Brown, responded by merely saying, Noted! On December 12, 2019, I wrote a Grievance to WellPath's Medical Director - Betty", at the Washtenaw County Jail. In this Grievance, I stated that I was somehow "Cleared to be housed in F Block inside a All metal cell despite prior mini-stroke and seizure condition, which I am receiving High level Chronic Care Meds for, as I am labeled a Fall Risk by 3 ERs, and was Factually given a Medical Parole by MI Dept. of Corr. for said diagnosis; I was also previously housed in Medical Infirmary floor at Wayne County Jail Prior to Med. discharge in April 2018. I also stated, I have had seizures while in F unit and is only a matter of time before I end-up falling and injurying self in Dangerous cell, which is knowingly placing my "Safety and health in Serious Danger".

Page. 25

24. cont.) about moving out of hazardous cell". On March 2, 2019, I wrote another Medical Grievance, this time to the Jail's Medical Director. In this Grievance, I stated, I am in a All metal cell so I can Retaliatorially w/Deliberate Indifference" to known Medical condition" Injure Self during Seizure in and/or out of cell, I was Medically Discharged from Wayne County treatment due to seizure condition". This Grievance was responded to on March 4, 2019, stating; I have been in Jail 7 months and they have managed my Medical needs and I was evaluated by the NP who found myself Medically stable, but they Flagged my seizure precautions and have NO other Special precautions at at that time". On March 4, 2019, I filed a 2nd Medical Grievance /Appeal to Jail's Medical Director. In this grievance, I informed them, that her Reply was Factually Subterfuge" ias I have had numerous Falls since arrival at Jail which included seizures in Med unit, C-unit, and F-units of Jail; 3 times requiring ER treatment, last fall being on 3-4-19 from residual effects of 3-2-19 seizure causing Left-side Numbness". I also stated that her False Response shows her Blatant attempt to conceal her staff's "Gross Negligence and Deliberate Indifference". This Grievance was responded to on 3-6-19, as being a "Repeat Kite". On August 8, 2019, I wrote a Medical Grievance to Medical Director of the Washtenaw County Jail, in this Grievance I stated I have a history of Seizures and Close head Injuries"

25. cont.) showing Disparate Treatment" (See, Farmer v. Brennan 511 U.S. at 837 ; Ctr. for Bio Ethical Reform Inc. v. Napolitano 648 F.3d 365 (6th Cir. 2011) ; Duvall v. Cnty. of Kitsap 260 F.3d 1124 (9th Cir. 2001) ; and Mingus v. Butler 591 F3d 474, 480 (6th Cir. 2010)), and Retaliatory denial of proper Medical care For Past Grievances written against Sgt. Flint and Medical staff (See, Maben v. Thelen 887 F.3d 252, 264). In the Dec. 25, 2019, Grievance I continued to state, that at Approx. 8am that morning, I ended-up trying to stand-up to get some Water per the LPN's order, and ended-up falling hitting my head on the Wall (as I was still dizzy). At that time LPN Ashley, came to cell with Sgt. Richard Williams, and I was yet again refused to be placed on Medical Observation. On Jan. 10, 2020, Captain R. Casey, responded to Grievance stating ; this was properly managed by staff involved".

26.) On December 30, 2019, I filed a Jail Grievance to Jail Captain R. Casey, in this Grievance I stated on 12-26-19, I ended-up falling in my "Substantially Dangerous cell" (See, Farmer v. Brennan 511 U.S. at 837-39 ; Helling v. Mckinney 509 U.S. 25, 36 (1993) ; Hope v. Pelzer 536 U.S. 730, 738 (2002)), hitting my head for a Second time in the cell that time on the cell's Metal desk splitting it open ; But was "Retaliated against and Directly Discriminated against due to Seizure Condition" by LPN-C. Engle, of Wellpath (See, Fry v. Napoleon Cmty. Sch. 137 S. Ct. 743, 749 (2017) ; Bragdon v. Abbott 524 U.S. 624 (1998) ; Maben v. Thelen

Page 25

24. cont.) On 12-16-19 Heath Care Admin. Brown, responded stating, that Betty was NO longer with Well-Path, and they have Seizure Patients housed in All units in the Jail, F Block is NO different from the others. Jail Classification decides where to house myself, Not Medical; there is no reason for Medical housing at that time.

25.) On December 25, 2019, I wrote a Grievance to the Washtenaw County Jail's Lieutenants, Captain Randy Casey, whom are in charge of the Sub-contracted employees of the Jail (including Medical Staff). In this Grievance, I stated at Approx. 4:30 am I had a seizure, that was witnessed by Deputy Head, whom called Wellpath Medical staff-Elizabeth (Libby), and Sergeant (Sgt.) Flint whom came to my cell. When LPN Elizabeth, came to my cell she took my hightened vitals, and told myself to drink a "cup of water". Then as vitals were high, and I begun to vomit, and chest hurt, Deputy Head again called LPN, whom on "Sgt. Flint's" Body Camera Video Blatantly denied my ever telling her I had a seizure as I clearly did, as did the Deputy upon calling. While Sgt. Flint was holding the Body Camera he continued to laugh, smile, and shake his head at myself re: my Medical condition. I also informed Both LPN Elizabeth, and Sgt. Flint, that I was feeling Dizzy, but was denied to be Placed on Medical Observation" as others similarly situated are Routinely

27. cont.) seizure that occurred on 12-29-19, which has occurred two times in past and is said to be "Complex Partial Seizure"; Wayne Beaumont Hospital speculated Todd's Paralysis ) (See, 42USC§12102; 29USC§794; Peden v. City of Detroit 470 Mich. 195, 202 (2003); Robertson v. Las Animas Sheriff's Dept. 500F3d 1185 (10th Cir. 2007)). I was then helped to a All metal cell, that I had already fell in on Three occasions, one time requiring ER treatment even though I was Clearly Un-able to properly Stand or Walk; I also stated that I was feeling Medical Staff was being Ordered by Lt.s to "NOT give Proper Medical Care and/or Accomodation for Disability" (See, Kingsley v. Hendrickson 135 S.Ct. at 2473-74; Turner v. City of Englewood 195 Fed Appx. 346 (6th Cir. 2006); Windham v. Harris Coty. 875 F.3d 229 (5th Cir. 2017); Village of Willowbrook v. Olech 528 U.S. 562, 564 (2000)). On Jan 8, 2020, Jail Capt. Casey, responded to my Grievance stating, I was housed Correctly based on Classification.

28.) On December 31, 2019, I filed a Grievance to the Jail's Captain and Internal Affairs Deputy - B. Miller, of the Washtenaw County Sheriff's Dept. In this Grievance I stated, I had Deputy - A. Fair, inform LPN-Erin, "of Left-side Numbness", and when LPN came to my cell in F unit she was escorted by Jail Supervisory Staff Sgt.s - R. Williams III, and Clifton (Both of whom I have had numerous issues with Prior to 12-31-19 including

26. cont.) 887 F.3d at 264; 42 USC 312132; 42 USC § 12181(7) (F)) When Again directly after falling Nurse Engle, ordered the Two other Nurses present Not to place myself on Medical Observation, as is Routine Wellpath procedures, and commonly done at the Jail. So then once returned to cell, I ended-up falling a Third time in Two days, this time however I was transported to the Local ER by EMS, due to Jail Command staff seeing Nurse Engle's Gross Negligence; Deliberate Indifference; Discrimination; and Retaliatory conduct. Once returned from ER, I was then Placed on "Med. Ops". On Jan. 8, 2020, Captain Casey, responded to Grievance stating, I was seen by Med. Staff, and was housed based on Classification.

27.) On Dec. 30, 2019, I wrote a 2nd. Grievance to Jail Captain and Commander-Eric Kunath, in this Grievance I stated, I felt I was being Retaliated against by Jail's Classification and Lts. for having Nov. 2nd, 2019, Misconducts Reversed by being "Deliberately Placed in a Unit and Cell that Clearly poses a Substantial Risk to Health and Safety" due to well known Medical issues. I further stated in this Grievance, that on 12-30-19 I had to be brought to F-unit in a Wheelchair and helped to cell by staff, as I am Unable to Properly Stand or Walk (due to left side Numbness stemming from

29. cont.) Farmer v. Brennan 511 US at 837, 847 ; Greene v. Bowles 361 F3d 290, 294 (6th Cir. 2004) ) as is Clearly intentional Discrimination based on disability, which I was treated differently from others with similar disabilities; as I was Forced to be "in a cell that poses a Risk of safety and Crawl on Jail Floor" (when NO-one else was) (See, Ctr. for Bio Ethical Reform 648 F. 3d at 379 ; Olech 528 U.S. at 564; Harrison v. Ash 539 F. 3d 510, 518 (6th Cir. 2008) ; Thompson v. Williamson Cnty. 219 F3d. 555 (6th Cir. 2000) ). On Jan. 8, 2020 , Capt. Casey, responded to the Grievance, yet again stating I was housed correctly.

30.) On Dec. 31, 2019, I filed a Medical Grievance to WellPath Heath Care Admin. - M. Brown, in this Grievance I stated that on 12-30-19 I informed LPN-Erin, that I had Left side Numbness / paralysis, and was unable to properly move, as I again informed LPN Erin of on 12-31-19 but she disregarded these Medical issues in Conspiracy with Duty Sgt.s and LPN-Carrie Engle, for past issues w/ Deliberate Indifference for health. On 1-2-20 HCA - M. Brown, responded to my Grievance by simply stating , Noted.

31.) On January, 9, 2020, I filed a ADA Complaint pursuant to 42 USC § 12132 To: Wellpath's Health Care Director (See also, 42 USC § 12181 - Title III).

Page. 39

28. cont.) my writing Grievances against Both for issues including Assault on myself), which is when I directly overheard LPN-Erin, being told by Sgt. Clifton "that I would be fine and didn't have Shit coming, and could scoot around All I wanted (as I was/am Un-able to Properly Stand or Walk due to Left side Numbness; which was Obvious). I also stated this showed, Retaliation by Sgt-s Williams, and Clifton," to Discriminate against myself resulting in Disparate Treatment" (See, 42USC § 12132 ; Anderson v. City of Blue Ash 798F3d338 (6th Cir. 2015) ; Maben v. Thelen 887F3d at 264 ; Schmidt v. Odell 64 F. Supp. 2d 1032 (D. Kan. 1999)) and Conspiracy to deny Rights (See, 18USC §242 ; Robertson V. Lucas 753F.3d 606, 622 (6th Cir. 2014)) by Sgts. and LPN. On Jan. 8, 2020, Capt. Casey responded to Grievance, stating I was housed Correctly based on Classification and was being treated Accordingly by Wellpath staff.

29.) On Janurary 8th, 2020, I wrote a Jail Grievance to Jail Captain Casey, in this Grievance I stated, that on 1-3-20 I ended-up falling in my Substantially Dangerous cell in F Block hitting my head on the Metal Bunk "while trying to raise-up due to known Left side paralysis/Numbness", which was the Third time I fell and injured self inside a cell that clearly Poses a Risk to health and Safety but is disregarded (See,

32. cont) Denied Reasonable Accomodation(s) for In-ability to properly Stand or Walk w/o Justification, due to L-side Numbness stemming from CPS seizure (as St. Joe ER MD stated on 1-6-20) as has occurred 2 other times. I could not shower as I could not stand to do so, I am Forced to Crawl on Floor of Unit and cell due to falling a number of times, and "Both Wellpath and the County Refuse to Accomodate" as they do others with similar issues (See, Olech 528 U.S. at 564) as shows "Blatant Disparate Treatment Discrimination for Disability" (42 USC § 12132; 42 USC § 12181; MX Group v. City of Covington 293 F.3d 326 (6th Cir. 2002); Turner v. City of Englewood 195 Fed. Appx. at 354; Fry v. Napolean Cnty. Sch. 137 S. Ct. at 750). On 1-15-20 HCA-Brown, responded to Grievance stating, I was on the schedule to see Wellpath MD-Parker, for evaluation, "Shower Chair will be provided", as previously asked What accomodation was I looking for?

33.) On Jan. 15, 2020, I filed a Jail Grievance to Lt. Garcia and Capt. Casey, per. ADA 42 USC § 12132, and RA 29 USC § 794, Equal Protection Rights, Retaliation, based on Purposeful Discrimination directed towards ONLY myself for Disability. In this Grievance, I stated I am being denied Reasonable Accomodation due to Left Side Numbness/Paralysis stemming from Seizure on 12-29-19 which Obviously limits my ability "to stand and Walk properly" (See, 42 USC 12102), as had been

31. cont.) In this Medical Grievance, and Complaint, I stated, I have a known Seizure Condition that is extensively Medically documented in File from 3 ERs, MDOC, and another Jail, which I am on "Chronic Care Meds" for and have been experiencing Left Side Numbness/paralysis since 12-29-19, but am still being purposefully discriminated against by being Forced to be housed in a Substantially Dangerous cell even though I fell numerous times since been in cell attempting to move around W/o reasonable Accomodations as Mandated. I fell hitting Metal desk, then Bunk, but am still Refused Accomodation (See, Haynes v. Neshewat 2005 Mich. App. Lexis 1527 at § III; In re. Hicks/Brown 500 Mich. at 85-88; Hollis v. Chestnut Bend Homeowners Assoc. 760 F.3d 531 (6th Cir. 2014)). On Jan. 10, 2020, Wellpath's Jail's Health Care Admin- M. Brown, responded to Medical Grievance stating; "What Accomodation was I looking for? I am not the only seizure patient housed in same type of cell, Security decides where to house you, not Medical" (See, 42 USC § 12111; Burgess v. Fischer 735 F.3d 462 (6th Cir. 2013); Pembaur v. City of Cincinnati 475 U.S. 469, 480 (1986)).

32.) On January 15, 2020, I filed a Medical Grievance to WellPath Director, pursuant to 42 USC § 12132 (ADA); and 29 USC § 794 (RA) (See, Thompson v. Williamson Cnty 219 F.3d at 557). In this Grievance, I stated I'm being

34. cont.) being treated differently than ANY other Medical Inmate, as I was NOT allowed to have Walker inside my cell (even though other Inmates in Medical have had Walkers in cells); I could not have Tv on Per. Lt. Garcia's Memo (as others do even those on LOP); I was even given a Styrofoam tray (which has less food than a Regular Tray and is routinely used for Suicide Watch Inmates, and Max Inmates). I stated this showed purposeful discrimination for disability (See, 42 USC §12132; Anderson 798 F3d at 357; Thompson 219 F3d at 557; Peden 470 Mich. at 195; and Gohl 836 F3d at 682) and Intent to Punish (See, Kingsley 135 S.Ct. at 2473-74) and Retaliate (See, Hartman 547 U.S. at 250) for Grievances filed.

35.) On Jan. 26, 2020, I filed a Jail Grievance to Jail Lts. per. ADA and RA, for Deputy Le, Refusing to get myself "my MD Ordered" Shower Chair and Walker, so I could take a Shower and get to my bed w/o having to crawl naked on wet cell floor" to dress. However, Deputy Le, wished to Act with Deliberate Indifference to my Safety by Refusing to provide myself with the MD Ordered Items, that were kept in the office where she was working, stating to myself; "she didn't care what I did when asked how was I suppost to get to bed w/o falling". I then took a shower, being Forced to sit on floor of shower (as cannot stand per.

33. cont.) crawling on floor of cell and unit, when NO one else in Jail is subject to said "Disparate Treatment" for similar disability (See, Raytheon Co. v. Hernandez 540 U.S. 44, 52-53 (2003); Turner 195 Fed. Appx. at 354; Duvall 260 F.3d at 1124; Hollis 760 F.3d at 540). I also stated in this Grievance, I am being denied Retaliatorially a Walker" due to past Grievances filed against "Wellpath and Jail's Command Stuff", whom are Conspiring together to violate my Rights; as Both have been informed of Medical issues w/o Resolve, making it a "Official and Illegal Custom" as applied to myself" (See, Pembaur 475 US at 480; Burgess 735 F.3d at 462) (See also, Hartman v. Moore 547 US 250 (2006)).


34.) On Jan. 17, 2020, I wrote a Grievance to Lt. Garcia, and Capt. Casey, stating that on 1-16-20 I seen Wellpath MD-Parker, and his Asst. RN-Sara, and was "Ordered a Walker so I didn't have to Crawl on the floor". However, I felt that Jail Command staff was interferring with my Medical cure (On 1-18-20 I was moved from F-unit to Jail's Medical unit and given MD ordered Walker). On Jan. 19, 2020, I wrote a Grievance to Lt. Garcia, and Commander-Eric Kunath, in this Grievance I stated, I was then Now housed in the Jail's Medical unit due to "MD ordered Walker" for Medical disability, but since I was moved I was

35. cont.) Medically documented disability), then when I was done I tried to "hop out of shower on one leg" but fell due to wetness of floor", causing Injury to lower Back and Neck areas. I then stated after I fell, I attempted to notify Medical Deputy Le, of fall but she was Not paying attention so my pressing the Emergency Call button went to Jail's Central Command Ctr. whom notified Medical and Deputy Le, whom came to see myself laying on cell floor wrapped in ONLY a towel. I also stated this shows "Disparate Treatment Discrimination" (See, Raytheon Co. 540 US at 44; Anderson 798 F3d at 357), Deliberate Indifference to Medical Needs (See, Farmer 511 US at 837, 847), as well as Retaliation for past Grievances filed against Sgt. Clifton, as I heard him specifically tell Deputy Le; "Not to give myself shit" prior to him exiting the unit that Afternoon, and Conspiracy (See, Hartman 547 US at 250; Thomas v. Eby 481 F3d 434, 440 (6th Cir. 2006)) and Gross Negligence under MI Law (See, MCL 691.1407).

36.) On Jan. 29, 2020, I wrote a Jail Grievance to Lt. Garcia and IA, in this Grievance I stated, the Jail's Current HCA-Michelle Brown, attempted to Retaliate against myself for past Grievances filed, in-direct Conspiracy with Deputy Le, and MD-Parker's Asste-Sara Glaster (RN) (See, Hartman v. Moore 547 US at 250; and Robertson v. Lucas 753 F3d at 622)" by Overriding MD Parker's Order

36.cont.) to give myself a Walker", due to Leftside Numbness/paralysis. When on 1-29-20, HCA-Brown, took my Walker from the Medical officer's office, per. Deputy Le's, Request (due to 1-26-20 Grievance filed) even though I was not evaluated by MD Parker Again, which MD Parker's Asst. was present when occurred and was the one HCA Brown, "Actually had remove Walker". I stated in this Grievance, that it is Clear that HCA Brown intent is to Discriminate against myself for disability that Causes myself to need a Walker to Properly Stand (as I am forced to balance on One leg, or lean against items for stability), and Retaliate against myself for and due to past Grievances filed (See, Thomas 481 F.3d at 440), which Nobody else is Subject to such Treatment (See, 42 USCS 12132; Olech 528 U.S. at 564)! On Jan. 29, 2020 it took Jail's Sgt. to look into the matter and get my Walker Back. However, on Jan. 30, 2020, I was informed by Jail Sgt. Ed. Morman, that HCA Brown, in-fact had Walker Order resinded and I would be given a Wheel-chair When needed / upon need.

37.) Accordingly, I informed Washtenaw County Jail's Medical Staff of the need For Reasonable Accomodation under RA and ADA For Seizure Condition as early as Feb, 2019, but they Refused to provide an Accomo-dation "Disregarding the Substantial Risk" the cell

37. cont.) time and a Jail Sgt. Forced LPN-Engle, to send myself to the ER, as was done by EMS. Then when I returned from ER I was placed on "Med-Ops". On Dec. 29, 2019, I stated I had a seizure, that when I came to caused Left-side Numbness/paralysis (leg and arm areas), as I made known to Wellpath stuff, but on Dec. 30, 2019, I was still Medically Cleared to go back to a Regular Unit (the very same cell I came from), even though it was "Obviously Clear" that I was Unable to properly Walk and Stand (See, 42USC§12102) as I had to be brought to Unit in a Wheelchair and Actually helped to cell by two Deputies", as Nobody else with similar Medical issue was subject to such Disparate Treatment (See, Ctr. for Bio Ethical Reform Inc. 648F3d at 379; Peden 470 Mich. 201-02; In re Hicks/Brown 500Mich. at 85-88; Raythean Co. 540U.S. at 53; Windham 875F3d at 237). On Dec. 31, 2019, I stated that I personally heard Sgts. Williams, and Clifton tell and direct LPN-Erin, "to Not provide myself with proper Medical Care, thus discriminating against myself based on Disability of not being able to Stand or Walk from Left side Numbness/paralysis (See, Anderson 798F3d at 338; Schmidt 64F.Supp.2d at 1032), due to Retaliation for past Grievances filed against these 2 Sgt.s and Medical staff (See, Maben 887F.3d at 264); showing Civil Conspiracy to deny Rights (See, Robertson 753F3d at 622). As I was Deliberately treated Different than others with similar issues (See, Olech 528U.S. at 564). On Jan. 3, 2020, I ended up

37.cont.) with its All Metal furnishings Clearly posed to my Health and Safety (See, Farmer 511U.S. at 837; and Villegas 709 F3d at 568-69), establishing "Disparate Treatment Discrimination" due to disability as NO one else was subject to such Punishment and treatment for Similarly documented Conditions (See, Anderson 798 F3d at 338; Kingsley 135 S.Ct. at 2473-74; Olech 528 U.S. at 564). Then after I had a seizure causing Left-side parlysis, in March 2019, I received a Subterfuge Response by Jail's Medical Health Care Admin. On Aug. 2019, while going through a "bout/wave of seizures", I came to with HCA-M. Brown, telling Jail's Sergeants to move myself, which caused injury to my Neck area (See, Winkler 893 F3d at 890-91), and on Nov. 2019, I was placed in the Jail's "Restraint Chair" while having seizures. On Dec. 25, 2019, I ended-up falling in my cell hitting my head on the Wall, but was denied to be placed on "Medical Observation" as others with similar issues are Routinely by Procedure, leaving myself in a known environment that posed a "Substantial Risk to my Health and Safety", due to disability (See, Helling 509 U.S. at 36; Villegas 709 F.3d at 569; Turner 195 Fed Appx. at 354; Duvall 260 F3d at 1124). Then on the Next Day Dec. 26, 2019, I ended-up falling Again this time hitting my head on the Metal desk, splitting it open; but was Again Retaliatorially denied to be placed on "Med-Ops" by RN-K. Engle, "directly in Violation of Routine Jail procedures", until I fell a 3rd.

37. cont.) Falling in the cell that obviously posed a Substantial Risk to my health and Safety, hitting my head on the Metal Bunk splitting it open; causing myself to be placed on "Med-Ops" by HCA-Brown. Then in the Complaints I filed under ADA and RA, HCA-Brown, of Wellpath, responded Subterfugely acting as though the Proper Accomodation was not Obvious due to "In-ability to Walk and Stand Properly" (See, Haynes 2005 Mich. App. Lexis at 1527; Hollis 760 F. 3d at 531; Pembaur 475 U.S. at 480; Thompson 219 F3d at 557). Then on Jan. 16, 2020, I stated I finally seen Wellpath's MD-Parker, and was ordered a Walker to help Stand and Walk (See, 42USC§12102; 29USC§794), but on Jan. 29, 2020, Wellpath HCA-Brown, took my Walker Ordered by MD-Parker, even though I had not seen the MD nor had Anything Medically changed (as I was/am still hopping on One leg and Scooting on bottom around cell floor); showing direct Retaliation by HCA-Brown, and discrimination based on Disability (See, Hartman 547U.s. at 250; Hollis 760 F3d at 540; Turner 195 Fed. Appx. at 354; Gohl 836 F3d at 682; Fry 137 S.Ct. at 750); which was in Conspiracy with Deputy Le, due to 1-26-20 Grievances filed against Deputy Le, as stated (See, Robertson 753 F3d at 622). I also state, this shows Illegal Policy and /or Custom, establishing Municipal Liability for WellPath and Washtenaw County (See, Burgess 735F3d at 478; and Nouri v. Cnty. of Oakland 615 Fed. Appx. 291, 296 (6th Cir. 2015)).

38.) Issue Five : Denial of Procedural Due Process Rights for Pre-Trial Detainee, Relating to Jail Disciplinary Hearings ; Retaliation for Grievances ; and Municipal Liability.

While incarcerated at the Washtenaw County Jail as a Pre-Trial Detainee, from October 1, 2018 to January 9, 2020", I received Jail Disciplinary Reports/Write-Ups, for alleged Misconducts while in the Jail, by Jail and County Policy, that Resulted in Loss of Privileges without Mandated Due Process Rights ; with the Intent to Punish (See, Kingsley v. Hendrickson 135 S.Ct. at 2473-74 ; Bell v. Wolfish 441 U.S. 520, 535-37 (1979) ; Wolff v. McDonnell 418 U.S. 539, 563-65 (1974)).

39.) On Oct. 2, 2018, I wrote a Grievance to Jail Lt. Schiappacasse (that was in charge of Jail Classification at the time), regarding myself being written a "False Misconduct" for simply having Apple Juice (that I received that day as part of my Breakfast tray, and was Not fermented) in a Pop bottle. I stated, I was Never given Any Written Notice of the facts of the Charge ; ability to defend against the charge ; nor Reason for findings, as mere juice does not fit a finding of Guilt. On Oct. 4, 2018, Jail Lt. Schiappacasse, responded to my Grievance stating," Notice of Charges are ONLY required

39. cont.) for Major Write-Ups", I only received a Minor "For having items and using them for something Outside their intended purpose".

40.) On Nov. 6, 2018, I wrote a Grievance and Misconduct Appeal to Lt. Schiappacasse, stating that I was deemed Guilty by a Jail Hearing Board (consisting of a Sgt. and Two Deputies of the Jail) and Sgt. Burris, of "Conduct that Disrupts the Security of the facility", for Allegedly refusing to lock-down (ie, go inside my cell). In this Grievance and Misconduct Appeal to Lt. Schiappacasse, I stated also, that per. Wolff v. McDonnell, I Never received "Clear written Notice explaining What Rule I violated and How I violated that Rule", in advance to Hearing being conducted, which left myself to guess at what was alleged due to ambiguousness of charge. I also stated, I was unable to properly defend myself against the alleged Misconduct without seeing the "Reports Actually written by the Deputy" alleging Misconduct, which Washtenaw County Custom does not allow (See, Wolff v. McDonnell 418 U.S. 539, 564 (1974); Daniels v. D.O.C. 2007 Mich. App. Lexis 420 (2007); Maben v. Thelen 887 F.3d 252, 260-61 (6th Cir. 2018); Powell v. Washington 720 Fed. Appx. 220, 227 (6th Cir. 2017); Burgess v. Fischer 735 F.3d 462, 478 (6th Cir. 2013); Alexander v. Hoffman 2019 U.S. Dist. Lexis 48941 (EDMich. March 25, 2019); MI Admin. Rule 791.3310; and MCL 791.252), and that I received the Punishment of 10 day Loss of Privileges, even though "Sgt. Burris"

40. (cont.) Blatantly refused to "review the Video of the alleged incident Proving my side of the Case", nor was I ever given anything explaining the reason(s) for the findings ;as Required. On Nov. 7, 2018, Lt. Schiappacasse, responded to my Grievance by simply stating, "Please obey orders from staff".

41.) So on Nov. 8, 2018, I wrote a Second Grievance and Appeal to Lt. Schiappacasse, stating that in reply to his Assumed Denial of my Appeal dated 11-7-18, I was told I was deemed Guilty Not of refusing to Lock-up (as I did not do), and Did w/o issue when told, but due to incident occurring Prior to that. On Nov. 13, 2018, Lt. Schiappacasse, responded stating, "so in the future perhaps just Lockdown, it will help avoid discipline issues as will simply following Jail Rules"

42.) On Dec. 7, 2018, I filed a Grievance to Lt. Schiappacasse, for violations of Due Process Right to Notice and Hearing Prior to having a Punishment imposed (See, Daniels v. Williams 474 U.S. 327, 331 (1986); Phillie Wagner Inc. v. Lever 239 U.S. 207 (1915); and US v. James Daniel Good Real Prop. 510 U.S. 43, 53 (1993) ), because I was given a "Two Day LOP" for a Minor Misconduct w/o Ever being Informed of Any write-up Prior to the Disciplinary Action being imposed, which was done pursuant to Then Current Jail Policy/Custom. On Dec. 19, 2018, Lt. Schiappacasse, responded by stating, that a Minor did not require a Hearing, and I

42. cont.) should refrain from being disrespectful to staff.

43.) On Jan. 2, 2019, I wrote a Grievance to Jail Command, stating that I was then just informed by a Deputy that I received a "Retaliatory and Un-known Write-Up from Deputy Schankland, that caused myself to have a "3 Day LOP" issued. In this Grievance I also stated, that it is an Unconstitutional "Custom and/or Policy" when dealing with Pretrial Detainees, to be able to write them up and impose a Clear Punishment w/o any form of Notice or hearing (See, Bugess 735 F3d at 462; Nouri v. Cnty. of Oakland 615 Fed. Appx. at 296). This Grievance was responded to on Jan. 14, 2019, stating that I received a 3 Day Lop" for "creating a disturbance in the unit", to prevent further Lops, do not cause a disturbance.

44.) As I previously stated in this document (See, Pgs. 8-9 at §9, Issue 2), on Feb. 2, 2019, I was written a "False and Retaliatory" Misconduct by Deputy Fendt, that caused myself to be given a "7 Day LOP" and made a Level 1 Maximum Security Inmate (where I was Forced to come out of my cell in hand cuffs and legs shackles everytime I came out) due to Deputy Fendt's False allegation of assault. I was also housed in the Punishment side of F-unit for over 30 days, as a Punishment. I filed an Appeal to Jail Commander Kunath, on Feb. 6, 2019, whom responded on March 6, 2019,

44. cont.) by Reversing the Guilty finding Ordering Lt. Schia- ppacasse, to hold a Re-hearing which Never occurred (See, Kingsley 135 S.Ct. at 2473-74 ; Ky. Dept. of Corr. V. Thompson 490 U.S. 454, 459-60 (1989); Jones V. Brown 300 F. Supp. 2d 674 (ND Ind. 2003).

45.) On Aug. 25, 2019, I wrote a Request to Lt. Schiappacasse , and Capt. R. Casey, ashing for "Copies of Any and All Jail Disciplinary Reports against Myself by Deputies within the Jail and Approved by Sgt.s", and If I am Not able to have these Reports I wish to know What Law and/or Policy Exactly provides the basis of these denials"? The Reports in Question are from 2018 — to Current ONLY. I Never received Any form of Response to this request to Date.

46.) On Nov. 1, 2019, I wrote another Request to Lt. Schiappacasse, this one stating, I'm writing to Inquire into 2 vital Issues −1− Under What Policy or Law Exactly does the Jail and/or Cnty. use to deny Inmates Access to Jail Incident and Disciplinary Reports PRIOR to hearing or LOP ? ; 2− How does Corporate Counsel-Michelle Billard, fit into the Jail's Supervisory Hierarchy as far as Policy Implementation Do they (M. Billard) approve Policy Prior or during their Implement- ations ? I Never received ANY response to this Request In Any form.

47.) On Nov.19, 2019, I filed 3 Misconduct Appeals, for 3 Major Misconducts I was deemed Guilty of Improperly on 11-19-19 by Sgt. Flint, and given 32 Days of LOP total (10 for 1st; 15 for 2nd.; 7 for 3rd). These Misconduct Appeals I filed to Lt. Schiappacasse, stating that per Current Cnty. Custom that Violates Wolff v. McDonnell, on 11-18-19 I was served with Insufficient Notice of Charge(s) and then heard on the charges at 1am on 11-19-19. I Never received ANY Clear Written Notice of facts alleged in Misconducts at least 24 hours in advance, nor was the fact finders of the hearing detached and/or Neutral; plus I Never received Any statements as to reasons for findings as Required (See; Gee v. Dept. of Corr. 235 at 396; MCL 791.252; MI Admin. R. 791.3310 - noting Jail hearings have NO Judicial Review available). On Nov. 22, 2019, Lt. Schiappacasse, responded Granting Re-hearings in All 3 Misconducts, which were eventually Reversed.

48.) On Nov. 22, 2019, I wrote a Grievance to Lt. Schiappacasse, stating that I was written "a False and Retaliatory Misconduct" by Deputy Valdivida, for fighting that I was deemed NOT Guilty of that same day due to the Video Clearly showing I was NOT fighting (See; Thomas v. Eby 481 F. 3d at 440). This was done by Deputy Valdivida due to Past Grievances I wrote against him, while I was in Medical for Sexual harassment under P.R.E.A. as he stated to myself prior to writing the known False Misconduct that other Inmates heard.

48. cont.) Lt. Schiappacasse, responded to this Grievance on Nov. 25, 2019, stating, the purpose of a hearing Board is to help determine Guilt. It appears you were not found Guilty.

49.) On Nov. 28, 2019, I filed a Misconduct Appeal to Lt. Schiapp-acasse, stating that on 11-26-19 I was heard on a "Clearly False Misconduct" written on 11-23-19 by Deputy Valdivida, from when he worked unit on 11-22-19 (the same day he wrote the false fighting Misconduct I was deemed Innocent of). In the Misconduct Deputy Valdivida, alleged I tried to spit water on him (when my water was off by his own statements) through a vent, which was coincidently after he alleged I was fighting. I was Biasly deemed Guilty of this Misconduct, by Sgt. Flint even though I had witnesses that stated I did not do what the Deputy alleged, and the Deputy was Clearly angry that I was deemed NOT guilty of his false fighting Misconduct occurring that same day allegedly; but Sgt. Flint disregarded these facts, including the fact my water valve was broken and leaked when turned-off (Sgt. Flint, is Notably the Sgt. that was just previous to this Reversed by Lt. Schiappacasse, in 3 Miscon-ducts alleged on 11-2-19). I received 20 Days LOP for this false and Retaliatory Misconduct, due to Sgt. Flint's Bias (see Mabon v. Thelen 887 F3d at 265 i Wolff (18 US at 539).

50.) On Dec. 22, 2019, I wrote a Grievance to Lt. Garcia, stating that on 12-19-19 I was written a false Misconduct

50. cont.) by Sgt. Flint for a 3rd. Minor Misconduct, that I was deemed Not-Guilty of on 12-22-19, due to myself walking away from the cell door, as others were still standing at theirs as stated and they admitted. This showed Sgt. Flint's, Retaliatory nature when dealing with myself (See, Thomas 481 F3d at 440). It should be also noted, that in the Misconduct written by Sgt. Flint, I was later given a para-phrased excerp of the 3 Minors, and in that excerp, it states "I was deemed Guilty of Minor Misconducts on 11-30-19 and 12-10-19" but Again, due to Current County Custom I was Never informed of either of the 2 minors I am said to be deemed Guilty of, Prior to seeing the excerps.

51.) Accordingly, as One Court noted Washtenaw County Jail's Disciplinary and/or Misconduct Policies are "Ambiguous" (See, Butz v. Clayton 2016 US Dist. Lexis 57874 (ED Mich. 5-2-16); 2016 US Dist. Lexis 57877 (ED Mich. 4-7-16) - Claimed Dismissed as Plaintiff provided No facts) at Minimum. However, per. Due Process Rights of Pretrial detainees, to not be Punished without necessary Procedural protections afforded, and that "the challenged Actions Not be Excessive in relation to rationally legitimate Government objective". The Washtenaw County Sheriff's Dept. Policies, that Sheriff - Jerry Clayton, is by State Law responsible for making the Policy decisions regarding the Jail (See, MCL 51.75; Miller v. Calhoun Cnty. 408 F3d 803, 814 (6th Cir. 2005)), however Washtenaw

51. cont.) County Corporate Counsel-Michelle Billard, is the individual responsible for advising the Sheriff of the Constitutionality of the Policies he wishes to create. Then the Washtenaw County Under-Sheriff Mark Ptaszek, enforces the Policies in the Jail, and Jail Commander-Eric Kunath, is responsible for training and Supervising Jail staff regarding these Policies. Thus, the Custom of Not providing Inmates with copies of the "Entire Misconduct/Incident Reports" written against them by Deputies, Prior to a hearing or LOP being given to allow them to know Exactly what is alleged, as Mandated (See, Maben 887 F.3d at 260-61; Jones 300 F. Supp. 2d at 674; Powell 720 Fed. Appx. at 227; Alexander 2019 US Dist. Lexis 48941; Wolff 418 U.S. at 564), is their Responsibility (See, Burgess V. Fischer 735 F.3d at 478; Pembaur 475 U.S. at 480) as is their "failure to Properly Train their staff to provide these documents", showing Deliberate Indifference (See, Connick v. Thompson 563 U.S. 51, 61-62 (2011); and Ruiz-Bueno V. Scott 639 Fed. Appx. 354, 364 (6th Cir. 2016)). This shows Washtenaw County's Policy of the Jail is Excessive in relation to Any Reasonable Governmental Objective, as is Not providing Any form of Notice or hearing for a Minor Misconduct which Routinely occurs. This violates the Substantive Goal of preventing Governmental Power from being used for oppression (See, Daniels V. Williams 474 U.S. at 331), deprives Inmates Property Rights and/or Created Liberty Interests. As I was denied my Right to possess my Radio I bought, while on LOP for the Misconducts

51.cont.) that ended-up being Reversed. Unfortunately
for offending un-trained staff, "Just following Orders is not
a viable Legal Defense nor has been since WWII" (See, Kennedy
v. City of Cincinnati 595 F.3d 327, 337 (6th Cir. 2009)).


52.) **Issue Six:** Excessive Use of Force;
Assault and Battery; Failure to Protect/Intervene;
Retaliation; and Gross Negligence.


On Aug. 8, 2019, while a "PreTrial Detainee" at the
Washtenaw County Jail housed in Medical unit cell
#1 (with a Camera in the cell), I wrote a Grievance
to Jail Capt. R. Casey, stating that on that date I
was "Physically Attacked" by Jail Sgt. Clifton, while
Sgt. R. Williams III, stood by watching. I stated that,
Sgt. Clifton, came to my cell denying myself to place a store
Order per. Deputy Werner, with Intent to Physically attack
myself, as he "Intentionally handed Sgt. R. Williams, his
eye Glasses, hostilely asking (and approaching myself inside my
cell) "What I wanted to do?" (with his fists balled up). Sgt.
Clifton, then preceded to unnecessarily Remove Items from
my cell (with intent to provoke myself) saying "he was
taking All my shit!" I then asked him "Why he was Retaliating
against myself by talking my stuff (hygiene items, legal work

52.(cont.) Books; letters; Pictures)? It was then that Sgt. Clifton, with Sgt. R. Williams III, standing by, took my Clearly Non-Threatening Actions and/or Questions became Upset by, Deliberately and needlessly slamming myself to the cement cell floor on the Left-side of my face (causing a Whiplash like injury to my neck and face and eye areas to become swollen). But while I was on the ground with staff on top of myself and hand-cuffed and shackled (not resisting); Sgt. Clifton continued to use torture techniques on myself while he "excessively pressed on my Right eardrum area Pressure point with his thumb", needless causing myself further pain and injury to an already damaged ear, however Sgt. Clifton continued by "Wrenching my left arm" with the very intent to cause myself needless pain; in a already damaged shoulder. Sgt. Clifton, stated, Do I think I'm tough now, and how did I like that"? All this was done with Sgt. R. Williams, standing by doing Nothing to stop Sgt. Clifton's use of Excessive Force. I finally state in this Grievance, that I have wrote a number of Grievances prior to that date against Both Sgts. for their threats of harm towards myself.

53.) It shall be noted, that the Use of Excessive Force did NOT stop on Aug. 8, 2019, until Jail Lt. Schiappacasse, came directly to my cell and Ordered myself removed from the Needless retraints, and staff to exit my cell.

53. cont.) That is the reason I sent the Grievance to Capt. R. Casey, whom Never in Anyway replied to it.

54.) Accordingly, it is shown from the facts stated that Sgt. Clifton's, Actions were intended to Punish and had no legitimate Gov. Objective, or at least Excessive in Relation to that purpose (See, Coley v. Lucas Cnty 799 F3d at 538). Sgt. Clifton's, intent when he entered my cell was to assault myself (as shown by his handing his eye glasses to Sgt. Williams prior to entering), even though there was "No need For the Use of Force" (See, Hanson 736 Fed Appx. 528-29), as I was inside my cell and NO threat to Anyone. Further, "absence of Serious Injury is Irrelevant to Excessive Force claims" (See, Wilkins v. Gaddy 559 U.S. 34, 37-38 (2010); Miller v. Sanilac Cnty 606 F3d 240, 252 (6th Cir. 2010)). It is also shown that at minimum, Sgt. R. Williams, "observed myself being assaulted and failed to intervene and stop that assault". Sgt. Williams, had the ability to prevent the incident from occurring at All, as he knew or should have known Sgt. Clifton's, intent when Sgt. Clifton handed him his eye glasses; but failed to do anything (See, White v. Bell 656 Fed. Appx. 745, 749 (6th Cir. 2016); McHenry v. Chadwick 896 F2d 184, 188 (6th Cir. 1990)), as Required! I find it significant that prior to 8-8-19 I filed a number of written and Verbal Grievances against Both Sgts, as

54. cont.) noted in 8-8-19 Grievance (See, Hartman v. Moore 547 US at 260; Maben v. Thelen 887 F.3d at 265). Lastly, Sgt. Clifton's, Actions also satisfy MI State Law Claims for "Assault and Battery" (See, Thronton v. Fray 429 Fed Appx. 504, 512 (6th Cir. 2011); and Both Sgt. Clifton and Sgt. R. Williams', Actions satisfy MI State Law Claims of Gross Negligence (See, Quigley v. Tuong Vinh Thai 707 F.3d 675 (6th Cir. 2013); Odom v. Wayne Cnty 482 Mich. 459 (2008); MCL 691.1407).

55.) Issue Seven: Denial of Religious Rights to Religious Diet, that fit beliefs and is healthy.

On October 4, 2018, I Filed a Jail Grievance to Jail Cmdr. stating, I was on the Jail Kosher's diet per Jail approval But since Summit and Food Service Director Mararia, took over the Jail's Food Service, my Calorie Intake decreased by 1/3 at least. On Oct. 19, 2018, Capt. Casey, responded by stating I was being provided the Calorie Intake I need.

56.) On Oct. 6, 2018, I Filed a Grievance to Jail's Kitchen stating, on that Date I received Meat and Milk" in the same meal for my Kosher diet, which Violates Very Basic Jewish Religious beliefs as well as my Sincerly held belief. I also state this has

Page 53

56. cont.) occurred at least 5xs since Summit took over Food Service on Oct. 1, 2018. On Oct. 19, 2018, Capt. Casey responded to the grievance stating Simply, Summit Food Services provides proper Kosher Meals through their dietician.

57.) On Oct. 8, 2018, I wrote a Jail Grievance to Lt. Schiappacasse, stating that on my Kosher Diet my Calorie Intake has decreased by 1/3 at Minimum since Summit took over Jail Food Service and the kitchen re-done to point of Stomach Pains. I Also stated that I felt it necessary to hunger strike "In Order to Correct this Flagrant error. Where are the funds received under 42USCS2000cc, going surely NOT to Religious diets. On Oct. 9, 2018, Lt. Schiappacasse, responded to the Grievance stating, he spoke with the kitchen staff regarding the caloric value of the Kosher meals, kitchen staff had advised the current Kosher meal exceeds 2850 calorie standard and contains 89.5 grams of Protein. No change is planned.

58.) On Oct. 13, 2018, I wrote a Grievance to Jail Kitchen Director stating, on that date (a Saturday/Sabbath) I was given 2-things that Violate Clear Basic tenants of my Sincerely held Faith to (1) Not have food cooked on the Sabbath, and (2) Not have Dairy and Meat in same meal as I have received Beef Stew w/ Ranch Dressing (as Stew was hot). This violates my 1st Amend. Rights as

58. cont.) well. On Oct. 19, 2018, Capt. Casey responded to the Grievance stating merely, that Summit Food Services provides proper Kosher diets.

59.) On Oct. 16, 2018, I wrote a Jail Grievance stating that on Oct. 14 and Oct. 16, 2018, I was given food on my Religious diet that contained Soy Knowingly (as a hot packet) when I am known to be allergic to Soy which was documented upon Jail arrival on 8-2-18. When I eat Soy become sick, have stomach pains, with headache — Clearly allergic reactions to eating Soy. I Never received ANY form of Reply to this Grievance.

60.) On Oct. 31, 2018, I wrote a Grievance/ Request to Lt. Schiappacasse, stating Due to my health issues and the fact the "current Religious diet provided Worsens these issues" making the diet Unhealthy to myself, I request to be Re-placed on a Regular diet and I will address issues in Court. I should NOT have to vomit every time I eat or starve (myself) that is Unhealthy. On Nov. 1, 2018, Lt. Schiappacasse, responded stating he'd let Medical and the Kitchen know for me.

61.) On Nov. 8, 2018, I filed a Jail Grievance stating, on 11-1-18 I was forced to change my diet Back to a Regular tray as the Summit provided Kosher diet is Unhealthy

61. cont.) For myself causing myself to experience Stomach pains, and vomiting (and I am NOT the only inmate affected like this), this Forced myself to Choose between Violating my Sincerely held beliefs or having health issues (after not eating for 10-12 days I was Forced to choose) which Violates 42 USCS 2000cc (Holt v. Hobbs 135 S.Ct. 853 (2015)) and 1st Amend. Free Exercise Clause Rights (O'Lone v. Shabazz 482 U.S. 342 (1987)). I Never received Any form of Response to this Grievance.

62.) On Dec. 9, 2018, I wrote a Jail Grievance to Jail Command stating in relevant part — considering that I was Forced to stop the Kosher diet as it was causing stomach pains and health issues, my Religious Rights are completely being trampled on by Summit. I Never received ANY response to this Grievance.

63.) Accordingly, as a Pre Trial Detainee I am still entitled to the 1st. Amend. Rights not inconsistent with my status (Pell v. Procunier 417 U.S. 817, 822 (1974)), and part of those Rights are to be provided with a "Adequate diet" without violating my Religious Dietary restrictions (See, Colvin v. Caruso 605 F.3d 282, 290 (6th Cir. 2010); Welch v. Spaulding 627 Fed. Appx. 479, 482 (6th Cir. 2015)), or Substantially Burdening my Religious Exercise (See, Holt 135 S Ct. at 859). As is stated, Food Service

(63. cont.) Director Morario, of Summit is the individual at the Washtenaw County Jail responsible for preparing the Religious Dietary menu. However, per my Grievances the Jewish Kosher Menu was Unhealthy for myself, and continuously violated my Sincerely held Religious beliefs under Both RLUIPA and the 1st. Amend., as he was informed of a number of times verbally by staff and per. my Grievances. But instead of having the dietician either see myself to create a "Adequate Diet that is Both healthy and fits my Religious beliefs", or simply provide items cooked in Accordance to Basis Jewish dietary laws, Director Morario, Refused to do this with Deliberate Indifference to my Religious Rights. Summit Food Service has "failed to properly Train and/or Supervise" its employees in the Proper preparation of Kosher diets, Contrary to Summit's current Policy/Custom, Jewish Kosher dietary Laws differ from them of Islamic dietary laws, as Director Morario, also refuses to recognize which Substantially Burdens my Rights (See, Connick 563 U.S. at 61-62 ; Pembaur 475 U.S. at 480 ; Burgess 735 F.3d at 478). I was made to choose between my Faith and my health, as is Improper due to the Unhealthy-ness of the Kosher diet to myself.

64.) **Issue Eight:** Excessive Use of Force ¡ Denial of Proper Medical Treatment ¡ Retaliation ¡ Class of One ¡ Failure to Protect ¡ Assault and Battery ¡ and Gross Negligence.

On November 19, 2019, I filed a Jail Grievance to Lt. Schiappacasse, stating that on Nov. 2, 2019, I was physically assaulted and attacked by Deputy Dea, with the "Riot Shield" when I complied with Sgt. Justice's, Order "to back up and place my hands behind my back" ( prior to this date I wrote/made a Complaint against Deputy Dea pursuant to P.R.E.A. for Sexual harassment). As I stated, Deputy Dea, rushed into my cell w/ the shield, slamming myself needlessly into the wall with the intent to cause myself pain (as being slammed into the wall with the shield caused pain to my lower back and shoulder area of left arm) which Sgt. Justice allowed to occur without intervening (See, White v. Bell 656 Fed Appx. at 749). While I was being assaulted and asking "Why are they assaulting me" (as I complied with the order), I was offering passive resistance trying to prevent myself from being further injured (See, Goodwin v. City of Painesville 781 F3d 314, 326 (6th Cir. 2014)) by the numerous staff on top of myself assaulting myself w/o need. It was then that Sgt. Justice, placed the pepper spray can about 2 inches from my face and sprayed myself directly in the eyes" (even though the can says do not spray closer than 6 inches)

(64. cont.) causing myself needless pain, as I was NOT acting violently and No threat (See, Champion v. Outlook Nashville Inc. 380F.3d 893, 903 (6th Cir. 2004) ; Vinyard v. Wilson 311F.3d 1340, 1348 (11th Cir. 2002)), with the very intent to punish myself (See, Kingsley 135 S Ct. at 2473). I further state, that it was shortly thereafter I had my face washed out of the Burning Pepper Spray (See, Vaughn v. City of Lebanon 18 FedAppx. 252, 273 (6th Cir. 2001) - noting effects of Pepper Spray), that I ended-up having a "Wave of Seizures" and moved being placed in the Emergency Restraint Chair During a Seizure, by and at Deputy Kohlenberg's, request (a Deputy I also filed previous grievances against having him reassigned from Medical Unit), despite clearly Basic concepts of Proper Medical care for Seizures, and concerns for my Health and Safety (See, Anthony v. Swanson 701 FedAppx. at 463 ; Blosser v. Gilbert 422 FedAppx. at 460). I was placed in the Restraint Chair (at Sgt. Justice's direction, and Deputy Kohlenberg's suggestion) by Deputy Kohlenberg, needlessly using a Injurious Wrist lock as I was in "Excessively Tight Hand cuffs and legg shackles" (that still to date some 2½ months later cause numbness in wrists and ankles) which I informed staff of but was dismissed (See, Lyons v. City of Xenia 417 F.3d 565, 575-76 (6th Cir. 2005) ; and Smith v. Stoneburner 716 F.3d 926 (6th Cir. 2013)). While in the Restraint Chair, I begun seizing again (as I was later told by staff), however this was disregarded by all parties

64. cont.) present and I was merely wheeled in the chair to F unit, showing Clear intent to punish w/o Due Process (See, Kingsley 135SCt. at 2473), and "Intentionally treated myself different with NO rational basis" (See, Davis V. Prison Health Servs. 679 F3d 433, 441 (6th Cir. 2012); Olech at 564). I finally state, that on Nov. 2, 2019, Deputy Kohlenberg, stomped on my already restrained left foot" with his Boot causing Injuries to my un-shoed left foot, as he did so he asked myself if I felt so tough now and how did I like that (See, Miller 606 F3d at 252). I Sincerely believe that Deputy(s) Dea, and Kohlenberg, used Clearly Excessive Force in direct Retaliation for Past Grievances/Complaints I filed against them prior to Nov. 2, 2019, causing them to be either reassigned or investigated (See, Hartman 547 US at 260; Thomas V. Eby 481 F3d at 440; Maben 887F3d at 265) Lastly, Sgt. Justice's Actions, as well as those of Deputys Dea, and Kohlenberg, satisfy MI State Law Claims of Gross Negligence (See, MCL 691.1407; Odom 482 Mich. at 459) ; and MI State Law Claims of Assault and Battery (See, Thornton 429 Fed Appx. at 512).

## Relief

I Respectfully request that this Honorable Court Grant myself the folkwing Necessary Relief (1) Compensatory Damages for each claim in a Reasonable amount determined by a Jury; (2) Punitive Damages for each claim in a Reasonable amount to be determined by a Jury; (3) that this Honorable Court enter a Declaratory Judgment declaring that my Rights were Violated by the Defendants as to each claim stated herein; and (4) Grant any other Relief that this Honorable Court deems, Equitable, Just, and necessary, as Justice Demands.

Respectfully Submitted

Jeremy D. Schl

Feb. 13, 2020

Jeasery Daniel Solul
Washtenaw Cnty. Jail
2201 Hogback Rd
Ann Arbor MI 48105





Filed: Feb. 14th
2020

U.S. District Court
C/o Clerk
231 W. Lafayette Blvd.
Detroit MI 48226

Postmark not legible—
DP 2/24/20



# CIVIL COVER SHEET FOR PRISONER CASES

| Case No. 20-10468 | Judge: David M. Lawson | Magistrate Judge: R. Steven Whalen |
|---|---|---|

| Name of 1st Listed Plaintiff/Petitioner: | Name of 1st Listed Defendant/Respondent: |
|---|---|
| JEREMY DANIEL SCHUH | JERRY CLAYTON ET AL |

| Inmate Number: | Additional Information: |
|---|---|

**Plaintiff/Petitioner's Attorney and Address Information:**

**Correctional Facility:**

WASHTENAW COUNTY JAIL
2201 HOGBACK RD.
ANN ARBOR, MI 48105

**BASIS OF JURISDICTION**
- ☐ 2 U.S. Government Defendant
- ☒ 3 Federal Question

**NATURE OF SUIT**
- ☐ 530 Habeas Corpus
- ☐ 540 Mandamus
- ☒ 550 Civil Rights
- ☐ 555 Prison Conditions

**ORIGIN**
- ☒ 1 Original Proceeding
- ☐ 5 Transferred from Another District Court
- ☐ Other:

**FEE STATUS**
- ☒ IFP *In Forma Pauperis*
- ☐ PD Paid

**PURSUANT TO LOCAL RULE 83.11**

1. **Is this a case that has been previously dismissed?**
   ☐ Yes    ☒ No
   ➢ If yes, give the following information:

   Court: _____

   Case No: _____

   Judge: _____

2. **Other than stated above, are there any pending or previously discontinued or dismissed companion cases in this or any other court, including state court? (Companion cases are matters in which it appears substantially similar evidence will be offered or the same or related parties are present and the cases arise out of the same transaction or occurrence.)**
   ☐ Yes    ☒ No
   ➢ If yes, give the following information:

   Court: _____

   Case No: _____

   Judge: _____